UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| RODNEY E. WIMMER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Cause No. 1:12-CV-383 |
| | ) |
| CAROLYN W. COLVIN,[1] | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Plaintiff Rodney E. Wimmer appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying his application under the Social Security Act (the "Act") for Supplemental Security Income ("SSI").[2] (*See* Docket # 1.) For the following reasons, the Commissioner's decision will be AFFIRMED.

## I. PROCEDURAL HISTORY

Wimmer applied for SSI in November 2009, alleging disability as of June 1, 2008. (Tr. 155-59.) The Commissioner denied his application initially and upon consideration, and Wimmer requested an administrative hearing. (Tr. 95-98, 106-12.) On November 24, 2010, a hearing was conducted by Administrative Law Judge ("ALJ") Bryan Bernstein, at which Wimmer (who was represented by counsel); Tammy Draper, a family friend; and a vocational expert ("VE"), testified. (Tr. 30-92.) On May 27, 2011, the ALJ rendered an unfavorable decision to Wimmer, concluding that he was not disabled because he could perform a significant

---

[1] Although Plaintiff brought this suit against Michael J. Astrue, the former Commissioner of Social Security, Carolyn W. Colvin became the Acting Commissioner on February 14, 2013. As such, under Federal Rule of Civil Procedure 25(d), Colvin is automatically substituted as a party in place of Astrue. Fed. R. Civ. P. 25(d).

[2] All parties have consented to the Magistrate Judge. (Docket # 14); *see* 28 U.S.C. § 636(c).

number of jobs in the economy despite the limitations caused by his impairments. (Tr. 11-22.) The Appeals Council denied his request for review, at which point the ALJ's decision became the final decision of the Commissioner. (Tr. 3-5.)

Wimmer filed a complaint with this Court on November 1, 2012, seeking relief from the Commissioner's final decision. (Docket # 1.) In this appeal, Wimmer contends that the ALJ improperly evaluated the opinion of Dr. Carl Hale, a consultative neuropsychologist. (Opening Br. of Pl. in Social Security Appeal Pursuant to L.R. 7.3 ("Opening Br.") 7-9.)

## II. FACTUAL BACKGROUND[3]

### A. Background

At the time of the alleged onset date, Wimmer was forty-five years old, had graduated from high school, and lived by himself on a thirty acre farm. (Tr. 155-58.) Wimmer has worked on his farm since high school and had previously supplemented his income by working random construction jobs with his father. (Tr. 324-26, 379.) He alleges that he became disabled as of June 1, 2008, due to chronic obstruction pulmonary disease ("COPD"); organic brain damage; learning disability; history of tachycardia; chest pain; hypertension; obesity; and adjustment disorder with anxiety. (Opening Br. 2.)

### B. Wimmer's Testimony at the Hearing

At the hearing, Wimmer testified that although he graduated from high school, he is illiterate and was enrolled exclusively in special education classes where everything was read to him. (Tr. 42-43.) While in school, Wimmer worked on his grandfather's farm (which he later

---

[3] In the interest of brevity, this Opinion recounts only the portions of the 394-page administrative record necessary to the decision.

inherited, and currently lives on), and also occasionally sharecropped and worked construction with his father. (Tr. 43-48.) Wimmer's father and neighbors have always managed his finances and perform any reading and writing he needs done. (Tr. 50.) Wimmer stated that since his father's passing, however, he has had difficulty maintaining his farm and house, and has had to increasingly rely on his neighbors for help. (Tr. 50-51.)

On a typical day, Wimmer tends to his animals, attempts to clean up around his house and farm, and drives over to his mother's house to help take care of her. (Tr. 48, 51-54, 57, 70.) Wimmer testified that although he used to be able to perform farm work and construction, in recent years his work has been limited to light maintenance and sitting in a tractor. (Tr. 53, 63-64.) Wimmer represented that he can only work for short periods of time without a rest, and he constantly feels light-headed and sweaty, and has pain in his lungs. (Tr. 57.)

Wimmer stated that he would like to work, but his illiteracy and heart problems limit his ability to do so. (Tr. 56.) He testified that he is currently on medication for his heart and high blood pressure, and that he previously had been prescribed Nitroglycerine, but could no longer afford it. (Tr. 58-61.)

### B. *Summary of the Relevant Medical Evidence*

In July 2007, Wimmer was admitted to the Marion General Hospital with complaints of lightheadedness, dizziness, and shortness of breath; he was diagnosed with bronchitis and hypertension. (Tr. 232-33.) In June 2008, he was hospitalized with chest pain and shortness of breath, and was diagnosed with mild hypokalemia and hyperlipidemia. (Tr. 279-82.) Later that month, Wimmer saw Dr. Abdul Basher, who diagnosed him with chest pain, shortness of breath, hyperlipidemia, hypertension, and a history of tachycardia. (Tr. 371-72.)

3

In January 2010, Henry Martin, Psy.D., performed a psychological evaluation at the request of Social Security. (Tr. 324.) Wimmer reported no previous mental health treatment, and represented that he is illiterate and has fourth grade level math skills. (Tr. 324-25.) During his cognitive assessment, Wimmer was able to do simple arithmetic, but was unable to do simple subtraction, division, or multiplication. (Tr. 326.) On the Wechsler Adult Intelligence Scale, Wimmer had a verbal comprehension score of 83, a perceptual reasoning score of 100, a working memory score of 58, a processing speed score of 71, and a full scale score of 76. (Tr. 327.) Dr. Martin found that Wimmer had difficulty with short term memory, recalling numbers, simple arithmetic, writing and copying skills, and read below a third grade level. (*Id.*) Dr. Martin diagnosed Wimmer with adjustment order with anxiety, learning disability, high blood pressure with a history of heart attack, and assigned a Global Assessment of Functioning ("GAF") of 55.[4]

Also in January 2010, state agency reviewing consultant Stacia Hill, Ph.D., completed a psychiatric review. (Tr. 331.) Dr. Hill found that Wimmer had a learning disability and adjustment disorder with anxiety. (Tr. 332-36.) She opined, with respect to listing-level severity, that Wimmer had mild limitations in restriction of activities of daily living and maintaining social functioning; and moderate difficulties in maintaining concentration, persistence, or pace. (Tr. 341.) Dr. Hill also found Wimmer had moderate limitations in ability to understand and remember detailed instructions, carry out detailed instructions, maintain attention and

---

[4] GAF scores reflect a clinician's judgment about the individual's overall level of functioning. American Psychiatric Association, Diagnostic & Statistical Manual of Mental Disorders 32 (4th ed., Text Rev. 2000). A GAF score of 41 to 50 reflects serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). *Id.* A GAF score of 51 to 60 reflects moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). *Id.*

concentration for extended periods, work in coordination with or proximity to others without being distracted by them, respond appropriately to changes in the work setting, and that he was not significantly limited or there was no evidence of limitation in the remaining thirteen categories. (Tr. 345-46.) Dr. Hill concluded that Wimmer had the ability to attend to simple repetitive tasks, "relate on at least a superficial basis on an ongoing basis with co-workers and supervisors," attend to tasks for sufficient periods of time, manage stress involved with simple work, and assigned a GAF of 55. (Tr. 347.) In April 2010, Dr. Kenneth Neville, a non-examining state agency psychologist, affirmed Dr. Hill's assessment. (Tr. 354.)

In January 2010, Dr. Timothy Shoemaker performed a physical examination at the request of Social Security, and diagnosed Wimmer with coronary artery disease, osteoarthritis, illiteracy, and sleep apnea. (Tr. 351.) In February 2010, Dr. J. Sands, a state agency reviewing physician, found that Wimmer had no severe physical impairments resulting in any physical limitation (Tr. 353); Dr. Sands's findings were affirmed by Dr. M. Brill in May 2010 (Tr. 355).

Subsequent to the November 2010 hearing, Dr. Hale performed a mental status disability evaluation at the request of the state agency. (Tr. 378.) On the Wechsler Memory Scale-IV, Dr. Hale found that Wimmer had scores ranging from low average to severely impaired; mildly to moderately impaired verbal recognition scores; and average visual recognition scores. (Tr. 383.) Dr. Hale's diagnosis was adjustment disorder with depressed mood; verbal learning-reading disorder, NOS, with attention/working memory deficits; cognitive disorder, NOS, primarily immediate memory defects; and assigned a GAF of 50. (*Id*.) Dr. Hale found that Wimmer had moderate limitations in his ability to make judgments on simple work-related decisions; moderate to marked limitations in his ability to understand and remember complex instructions;

5

and marked limitations in ability to carry out complex instructions, make judgments on complex work-related decisions, and respond appropriately to usual work situations and to changes in a routine work setting. (Tr. 384-85.)

### III. STANDARD OF REVIEW

Section 405(g) of the Act grants this Court "the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *see* 42 U.S.C. § 1383(c)(3). The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted). The decision will be reversed only if it is not supported by substantial evidence or if the ALJ applied an erroneous legal standard. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

To determine if substantial evidence exists, the Court reviews the entire administrative record but does not re-weigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for the Commissioner's. *Id.* Rather, if the findings of the Commissioner are supported by substantial evidence, they are conclusive. *Id.* Nonetheless, "substantial evidence" review should not be a simple rubber-stamp of the Commissioner's decision. *Id.*

### IV. ANALYSIS

*A. The Law*

Under the Act, a plaintiff is entitled to SSI if he "is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . .

. has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D).

In determining whether Wimmer is disabled as defined by the Act, the ALJ conducted the familiar five-step analytical process, which required him to consider the following issues in sequence: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the Commissioner, see 20 C.F.R. § 404, Subpt. P, App. 1; (4) whether the claimant is unable to perform his past work; and (5) whether the claimant is incapable of performing work in the national economy.[5] See Dixon v. Massanari, 270 F.3d 1171, 1176 (7th Cir. 2001); 20 C.F.R. § 416.920. An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. Zurawski v. Halter, 245 F.3d 881, 886 (7th Cir. 2001). A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. Id. The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. Id. at 885-86.

## B. The ALJ's Decision

On May 27, 2011, the ALJ issued the decision that ultimately became the Commissioner's final decision. (Tr. 11-22.) He found at step one of the five-step analysis that Wimmer had not engaged in substantial gainful activity after his application date, and at step two

---

[5] Before performing steps four and five, the ALJ must determine the claimant's RFC or what tasks the claimant can do despite his limitations. 20 C.F.R §§ 416.920(e), 416.945. The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. 20 C.F.R. §§ 416.920(e), 416.945(a)(5).

7

that Wimmer had severe impairments. (Tr. 13-14.) At step three, however, the ALJ concluded that Wimmer's impairment or combination of impairments were not severe enough to meet a listing. (Tr. 14-16.)

Before proceeding to step four, the ALJ determined that Wimmer's symptom testimony was not credible to the extent it portrayed limitations in excess of the following RFC:

> The claimant is not able to perform work that imposes close regimentation of production. Close regimentation of work activity is a consequence of certain operational demands for functioning within close tolerances or for an unusually rapid level of productivity. Employees in this work face rigid expectations with close and critical supervision that might be required when there is a high value placed by the employer on the product quality, the raw materials, the equipment employed, or upon coordination with other workers and the pace of production. Close and critical supervision in this context would produce unacceptable distress and prevent accommodation of personal discomfort. This work is defined by the differences from other jobs that allow the employees some independence in determining either the timing of different work activities, or the pace of work. Such flexibility as that in the work structure permits the employee an opportunity to catch up with ordinary productivity, especially when there has been a respite.
>
> Mr. Wimmer is also unable to address work that imposes contact with the public or strangers. Such work exposes employees to the emotional challenges of strangers who may have a personal response that disturbs sensitive individuals. For example, customers with emergencies or extreme dissatisfaction with service or products can display intense anger or despair that makes contact with them very uncomfortable. He cannot sustain changes to work location, co-worker identities, operational duties, and supervision without support and additional time allowance for adjustment to new routines. Neither can he [] successfully perform work demanding significant language processing challenges or detailed complex instructions. Since literacy is eliminated, he would require additional instruction in work with verbal requirements. The person is capable of jobs with short, simple instructions and repetitive challenges. He requires opportunities to sit or stand while working. Relevant impairments would prevent him from standing and walking longer than 75% of the 8-hour workday. He cannot engage in prolonged walking or standing for longer than 20 minutes. He cannot lift and carry greater than 20 pounds occasionally or 10 pounds frequently. He cannot work in atmospheric concentrations of dust, smoke, and chemical fumes or temperature and humidity extremes that would not be as comfortable as ordinary retail and commercial environments.

(Tr. 16-17.)

Wimmer had no past relevant work to consider at step four. (Tr. 20.) Based on the assigned RFC and the VE's testimony, the ALJ concluded at step five that Wimmer could perform a significant number of jobs in the economy, including hand folder, electrical accessories inspector, and hand packager. (Tr. 21.) Accordingly, Wimmer's claim for SSI was denied. (Tr. 22.)

### C. The ALJ Properly Evaluated Dr. Hale's Opinion

On appeal, Wimmer argues that the ALJ improperly evaluated the opinion of Dr. Hale. The ALJ gave "great weight" to Dr. Hale's opinion, but Wimmer contends that this cannot be true as Dr. Hale's opinion necessitates a finding of disabled, whereas the ALJ, of course, found that he was not disabled.

Specifically, Wimmer argues that Dr. Hale's assignment of a GAF of 50 and finding that he is markedly limited in his ability to respond appropriately to usual work situations and to changes in a routine work setting justifies a finding of disabled and is more severe than limitations in the RFC. The relevant portion of the RFC provided that Wimmer "cannot sustain changes to work location, co-worker identities, operational duties, and supervision without support and additional time allowance for adjustment to new routines. . . . Since literacy is eliminated, he would require additional instruction in work with verbal requirements." (Tr. 16.) Put simply, Wimmer argues that the RFC accommodation that he be given "support and additional time allowance for adjustment to new routines" understates Dr. Hale's marked limitation finding. (Opening Br. 7-9.) Because Wimmer's arguments are legally unsound and factually unsupported, the ALJ's evaluation of Dr. Hale's opinion will not be disturbed.

Wimmer first takes issue with the fact that the ALJ allegedly devoted only two sentences

9

of his decision to Dr. Hale's opinion. (Opening Br. 7.) This is simply untrue. The ALJ devoted two lengthy paragraphs–nearly a half-page–detailing the results of Dr. Hale's psychiatric evaluation, and devoted two *additional* sentences on the following page, in which he explicitly states that "great weight" is given to Dr. Hale's opinion. (Tr. 20.)

Next, Wimmer argues that Dr. Hale's assignment of a GAF of 50 is inconsistent with the ALJ's finding that he was not disabled, and at a minimum, warranted discussion. Although Wimmer recognizes that an ALJ is not required to make a disability determination based entirely on GAF scores, he asserts that *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010), stands for the proposition that a GAF of 50 does not support a conclusion that an individual is capable of sustaining work. (Opening Br. 8.)

Wimmer exaggerates the Court's holding in *Campbell* and the significance of GAF scores in general. As has been oft-repeated by courts in this circuit, "GAF scores are intended to be used to make treatment decisions, . . . not as a measure of the extent of an individual's disability." *Martinez v. Astrue*, No. 9 C 3051, 2010 WL 1292491, at *9 (N.D. Ill. Mar. 29, 2010) (internal quotation marks and citation omitted); *Curry v. Astrue*, No. 3:09-cv-565, 2010 WL 4537868, at *7 (N.D. Ind. Nov. 2, 2010) ("GAF scores are more probative for assessing treatment options rather than determining functional capacity and a person's disability."). GAF scores are a measure "of both severity of symptoms *and* functional level . . . [and] always reflects the worse of the two, the score does not reflect the clinician's opinion of functional capacity." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (emphasis in original) (quoting Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders ("DSM-IV") 32-34 (4th ed. 2000)).

Although the ALJ did not mention Dr. Hale's GAF score, it is clear that he considered, and in fact relied on, Dr. Hale's underlying findings. *See Denton*, 596 F.3d at 425 (rejecting claimant's argument that ALJ erred by refusing to consider a particular GAF score). Given that the ALJ considered the underlying records, the ALJ's failure to mention Dr. Hale's GAF score does not constitute reversible error. *See, e.g.*, *Moran v. Astrue,* No. 2:12-cv-28, 2013 WL 359657, at *11 (N.D. Ind. Jan. 30, 2013); *Bayless v. Astrue*, No. 11 C 3093, 2012 WL 3234044, at *16-17 (N.D. Ill. Aug. 6, 2012); *see generally Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result." (citations omitted)).

Next, Wimmer's contention that the ALJ's limitations in the RFC are incompatible with Dr. Hale's finding that he is markedly limited in ability to respond appropriately to usual work situations and changes in a routine work setting is legally unsupported. This lack of legal support is underscored by the fact that Wimmer failed to cite a single case supporting his contention.[6]

To begin with, Wimmer does not attempt to explain how the ALJ's limitation in the RFC that he be given "support and additional time allowance for adjustment to new routines" is insufficient or fails to accommodate his marked limitation in this category. *See Henderson v.*

---

[6] It should be emphasized that Wimmer is not arguing–and wisely so–that an evaluating psychiatrist's finding that the claimant has a marked limitation necessitates a finding of disabled. *See Dresser v. Colvin*, No. 12-cv-253, 2013 WL 791158, at *8 (S.D. Ill. Mar. 4, 2013) (stating that acceptance of a reviewing physician's opinion that claimant had marked limitations does not mandate conclusion that the claimant is disabled); *Harris v. Astrue*, No. 1:11-CV-310, 2012 WL 3031257, at *3 (M.D. Ala. July 25, 2012) ("The plaintiff recognizes that whether the ALJ[] is correct in his conclusion that a marked limitation 'does not preclude functioning' is not the dispositive issue. . . . A limitation that is 'serious' resulting in a 'substantial loss in the ability to effectively function' plainly does not 'preclude' all functioning in an area of concern.").

*Astrue*, No. 10-1638, 2011 WL 6056896, at *8 (W.D. Pa. Dec. 6, 2011) (affirming the ALJ because, in part, "[the claimant] fails to explain why she believes that [the ALJ's] limitations did not accommodate [the psychiatrist's] examination findings"). Moreover, the Seventh Circuit Court of Appeals has repeatedly found that an RFC does not need to repeat verbatim the limitations imposed by an evaluating physician "so long as it is evident that the claimant's deficiencies have been accounted for in the specific RFC limitation." *Terry v. Astrue*, 3:09-CV-503, 2011 WL 855346, at *20 (N.D. Ind. Mar. 7, 2011) (citing *Johansen v. Barnhart*, 314 F.3d 283, 288-89 (7th Cir. 2002) (finding claimant's limitation in concentration due to panic disorder was adequately accounted for with limitation to "repetitive, low-stress work"); *O'Conner-Spinner v. Astrue*, 627 F.3d 614, 619-21 (7th Cir. 2010) (discussing examples of acceptable RFC limitations made in other cases)); *see also Zoephel v. Astrue*, No. 12-C-726, 2013 WL 412608, at *11 (E.D. Wis. Feb. 1, 2013) (same).

Instead, Wimmer's entire argument is predicated on the notion that because Social Security Ruling 85-15–which the ALJ did not rely on, and as explained below, is wholly inapplicable to this case–states that a substantial loss (i.e., a marked limitation) in ability to respond appropriately to usual work situations and deal with changes in a routine work setting *justifies* a finding of disability, and because Dr. Hale found that Wimmer had a marked limitation in these categories, the ALJ's opinion is incompatible with that of Dr. Hale. SSR 85-15 states, in the relevant part:

> Where a person's only impairment is mental, is not of listing severity, but does prevent the person from meeting the mental demands of past relevant work and prevents the transferability of acquired work skills, the final consideration is whether the person can be expected to perform unskilled work. The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to . . . respond appropriately to . . . usual work situations; and to deal with

12

changes in a routine setting. A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base. This, in turn, would justify a finding of disability because even favorable age, education, or work experience will not offset such a severely limited occupational base.

Wimmer's reliance on SSR 85-15 is misplaced. First, and most obvious, SSR 85-15 applies exclusively where the claimant has only nonexertional limitations (in fact, the title of the ruling is "Titles II and XVI: Capability to do Other Work–The Medical-Vocational Rules as a Framework for Evaluating *Solely Nonexertional Impairments*" (emphasis added)), which is not the case here as Wimmer's alleged limitations are both exertional and nonexertional. *Lippart v. Barnhart*, 63 F. App'x 260, 267 n.2 (7th Cir. 2003) (unpublished) ("SSR 85-15, however, applies when a claimant has only nonexertional impairments. . . . Because [claimant] contends that he has both exertional and nonexertional impairments, SSR 83-14 applies."); *see Hicks v. Comm'r of Soc. Sec.*, 105 F. App'x 757, 765 (6th Cir. 2004) (unpublished) (SSR 85-15 does not apply where claimant has both exertional and nonexertional limitations); *Roberts v. Shalala*, 66 F.3d 179, 183 (9th Cir. 1995) (same); *Denison v. Astrue*, No. 10-1290-JWL, 2011 WL 3236071, at *6 (D. Kan. July 28, 2011) (same).

In his reply brief, Wimmer apparently concedes that SSR 85-15 applies only where there are solely nonexertional limitations, but argues that "the fact that he has additional exertional limitations [does] not make him any less disabled." (Pl.'s Reply Br. 3.) "We have no quarrel with this proposition. However, SSR 85-15, even if it were applicable would not dictate the result in any case. It merely helps provide a framework for the evaluation of nonexertional limitations." *Doneworth v. Shalala*, No. 94-4290, 1996 WL 26922, at *5 (6th Cir. Jan. 23, 1996).

In his reply brief, Wimmer also argues that even if SSR 85-15 does not apply, SSR 83-

13

14, and in turn, the Medical Vocational Guidelines (commonly known as the "grids") do, and under the grids a finding of disability is justified. Wimmer's argument is misplaced. SSR 83-14 states, "[u]se of a vocational resource may be helpful in the evaluation of what appear to be 'obvious' types of cases. In more complex situations, the assistance of a vocational resource may be necessary. . . . In more complex cases, a person . . . with specialized knowledge would be helpful." The ALJ found that Wimmer initially fell under grid rule 202.18, but because his "ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations," he called upon the VE "[t]o determine the extent to which these limitations erode the unskilled occupational base." (Tr. 21.) The ALJ properly found the grid rules inapplicable due to Wimmer's "additional limitations" and correctly relied on the testimony of the VE. *See Anderson v. Astrue*, No. 09 C 2399, 2011 WL 2416265, at *10 (N.D. Ill. June 13, 2011) ("[I]f the criteria of a [g]rid rule *exactly fit* a claimant's vocational factors, the rule dictates the outcome; but if no rule fits a claimant exactly, the [g]rid provides only a 'framework' or guidance for the disability determination." (emphasis added) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 2 at § 200.00(a)).

Accordingly, the ALJ did not err by calling upon a VE, instead of relying on SSR 85-15 (which, regardless, was inapplicable for the reasons stated above), in making his step five findings. *See Zolek v. Apfel*, 123 F. Supp. 2d 1136, 1142 (N.D. Ill. 2000) (stating that where the claimant had exertional and nonexertional limitations that did not directly fit a grid rule that it would have been improper for ALJ to rely on SSR 85-15 as he would have been "making a lay decision as to an inherently professional judgment (which is impermissible)"); *see also Fenton v. Apfel*, 149 F.3d 908, 910 (8th Cir. 1998) ("The Secretary is required to produce vocational expert

testimony concerning availability of jobs which a person with a claimant's particular characteristics can perform, if his or her characteristics do not match those in the regulations . . . .").

## V.  CONCLUSION

For the reasons articulated herein, the decision of the Commissioner is AFFIRMED.  The Clerk is directed to enter a judgment in favor of the Commissioner and against Wimmer.

SO ORDERED.

Enter for this 11th day of February, 2014.

/s/ Roger B. Cosbey
Roger B. Cosbey
United States Magistrate Judge